

## IN THE DISTRICT COURT FOR THE STATE OF OKLAHOMA
## CLEVELAND COUNTY

**DAHN GREGG** STATE OF OKLAHOMA }S.S.
  **PLAINTIFF** CLEVELAND COUNTY }

FILED

v.

MAR 02 2020      **CASE NO. CJ-2018-1507**

**STATE OF OKLAHOMA** *ex rel.* **THE** )
**DEPARTMENT OF HUMAN SERVICES,** office of the )**JURY TRIAL DEMANDED**
**ED LAKE, individually and** as ~~Court~~ Clerk MARILYN WILLIAMS )**ATTORNEY'S LIEN CLAIMED**
**of DHS, TRICIA HOWELL, individually and** )
**in her Official Capacity, JAMI MAJORS,** )    **HONORABLE JUDGE TUPPER**
**individually and in her official capacity,** )
**JAMIE LEDOUX, individually and in her** )
**official capacity** ).
 )
       **DEFENDANTS** )

### FIRST AMENDED PETITION

COMES NOW, the Plaintiff, Dahn Gregg, for her Petition against the State of Oklahoma
ex rel the Department of Human Services. In support of this Petition, Plaintiff alleges, and states
as follows:

### JURISDICTION AND VENUE

1. Plaintiff is a citizen of the State of Oklahoma and is a resident of Cleveland County.

2. Defendant the Department of Human Services (DHS) is an agency of the State of
   Oklahoma.

3. Defendant Ed Lake was at all relevant times the Director for DHS and a citizen of
   Oklahoma.

4. Jami Majors, is a citizen of the State of Oklahoma, a resident of Oklahoma County, and a
   Program Field Administrator and Plaintiff's supervisor.

5. Tricia Howell, is a citizen of the State of Oklahoma, a resident of McIntosh County, and
   the Deputy Director of Foster Care and Adoptions.

6. Defendant Jami LeDoux is a citizen of the State of Oklahoma, a resident of Oklahoma
   County, and at all relevant times was the Deputy Director of Child Welfare.

1

## EXHIBIT 11

7. Plaintiff is a member of a protected class based on her age being greater than forty (40), gender female and her medical diagnosis of depression, anxiety, fibromyalgia. All of which the Defendant knew about during her employment.

8. Plaintiff is an unclassified employee who was working for DHS for a period of time in which she spoke out against their failure to follow state and federal laws, the Pinnacle Plan and DHS policy and procedure.

9. On information and belief, all of the acts complained of occurred in the State of Oklahoma.

10. On May 17, 2019 Plaintiff served a Notice of Tort Claim on the Department of Human Services *ex rel*. the State of Oklahoma.

11. On May 21, 2019, the Office of Management and Enterprise Services (OMES) sent a letter to counsel for Plaintiff requesting additional information in support of Plaintiff's tort claim. *See Exhibit 1, OMES letter*.

12. Pursuant to the OMES letter, Plaintiff had until June 4, 2019 to submit additional documentation and information in support of her tort claim. See Exhibit 1.

13. Pursuant to the OMES letter, the time for calculating the expiration of Plaintiff's tort claim began on June 4, 2019, rather than the service date of May 17, 2019 due to OMES's request for additional documentation.

14. Plaintiff's tort claim was denied by operation of law on September 2, 2019.

15. One hundred and eight days from September 2, 2019 is Saturday, Feb 29, 2019 and because the deadline falls on a weekend, Plaintiff has until the next business day to file suit which is Monday March 2, 2020.

16. Therefore, Plaintiff tort claims are timely filed.

## STATEMENT OF FACTS

17. Plaintiff was terminated from her employment as a Program Field Representative with DHS on May 21, 2018.

18. On February 12, 2018, prior to her termination, Plaintiff filed a charge of discrimination with the EEOC relating to ongoing discriminatory treatment in her employment with DHS. *See Exhibit 2, EEOC Intake Questionnaire (redacted)*

19. On or about July 30, 2018, Plaintiff submitted an Amendment to her charge of discrimination.

2

**EXHIBIT 11**

20. Based on EEOC policy and procedure, DHS either knew or should have known of Plaintiff's EEOC claim prior to her termination.

21. On July 30, 2018, the EEOC issued Plaintiff's Charge of Discrimination. *See Exhibit 3, Charge of Discrimination.*

22. On or about August 22, 2018, the EEOC issued Plaintiff's Right to Sue Letter. *See Exhibit 4, Right to Sue Letter (redacted)*

23. On or about November 2, 2017, three (3) other DHS employees, Heidi Stingley, Holly Goralewicz, and Shawna Burley, gave an interview on Channel 9 news in Oklahoma where initially they had come forward about failures within the child welfare system in the state of Oklahoma and discussed ongoing violations of the Pinnacle Plan.

24. The Pinnacle Plan is a settlement and plan for the recovery of the OK DHS child welfare system as a result of a civil rights class action lawsuit that was filed against DHS in the Northern District of Oklahoma in or around 2008.

25. As part of the settlement terms, the Pinnacle Plan was put into place limiting the case load of workers to ensure that they had adequate time, training and resources to protect the children referred to DHS.

26. The individuals who came forth in the fall of 2017 had many of the same or similar complaints as Plaintiff Dahn Gregg.

27. As a result of the interview shown on channel 9 on or about October 23, 2017, Plaintiff sought the legal services of attorney Rachel Bussett and the Bussett Legal Group.

28. In December 2017, Plaintiff retained legal services regarding the ongoing retaliation she had been experiencing as a result of speaking out on matters of public concern against the system.

29. After Plaintiff sought the assistance of Bussett Legal Group she sought out other individuals with whom she worked at DHS to participate in coming forward about the problems with the DHS Foster Care system and the failure of the Pinnacle Plan.

30. Specifically, Plaintiff sought the assistance and cooperation of her counterpart Katrina Smith.

**EXHIBIT 11**

31. Katrina Smith testified under oath that prior to Dahn Gregg's termination from DHS she told her superiors that Dahn Gregg was up to something with a lawyer.

32. Jason Smith, the former husband of Katrina Smith, testified under oath that Katrina Smith told her superiors and the superiors of Dahn Gregg that Plaintiff had retained an attorney and was working with the other whistleblowers working with Bussett Legal Group.

33. Plaintiff's attorney was also a member of the media and routinely wrote about Plaintiff and the other individuals who were speaking out against DHS in the media throughout 2017 and 2018.

34. On information and belief, DHS knew that Bussett was a member of the media as DHS supervisors commented to other employees represented by Bussett about the columns Bussett wrote about DHS's failure to abide by the law.

35. Additionally, during the time when Gregg was first linked with her counsel, Bussett was also actively running for Canadian County Associate District Judge to oversee the DHS deprived and delinquent dockets and was running on a platform regarding the failure of the predecessor to ensure that DHS complied with the law in regard to the investigation and removal of children for natural parent homes and the failure to protect children in the system.

36. Additionally, on information and belief, during this time, DHS employees were openly and notoriously violating state campaign law by campaigning against Bussett on state property, utilizing state equipment on state time.

37. During the late fall of 2017 and the winter and spring of 2018, Plaintiff was routinely linked to Rachel Bussett and Bussett Legal Group in the media and on social media for speaking out about the failures of DHS.

38. Plaintiff was a witness in support of the other whistleblowers and began speaking out more often and more forcefully about the failings of DHS including speaking out in social media.

39. Plaintiff had been speaking out within the DHS system and to friends, family, co-workers, supervisors and anyone who would listen about the failings of the DHS system.

**EXHIBIT 11**

40. Plaintiff was a part of the team that dealt with the placement of Serenity Deal as child who died while in DHS custody due to the failure of child welfare workers to follow department policy and procedure.

41. Plaintiff was speaking out on matters of public concern addressing the failure of the Foster Care system to protect children.

42. Plaintiff was speaking out on matters of public concern addressing DHS overloading workers who investigated claims of child abuse and neglect.

43. Plaintiff spoke out about children being placed in adoptive homes where the Foster Parents were not legally eligible to adopt children due to things like prior child welfare history, inadequate financial resources, abuse and neglect occurring in the home itself and other matters.

44. Plaintiff emailed and submitted grievances and complaints to her superiors, co-workers and others outside her chain of command to redress her concerns with the system.

45. Plaintiff was previously demoted after speaking out about the use of handcuffs in a shelter facility on a child under the age of 10 years old.

46. On or about March 17, 2018, Plaintiff gave an interview with the same reporter at Channel 9 as the other whistleblowers had spoken too confirming their statements about the problems in the child welfare system.

47. Items which Plaintiff discussed with the reporter and others include but are not limited to:

    a.  DHS's failure to follow state and federal law and agency policy and procedure by placing children in homes with documented previous child welfare history, criminal history, sexual offender history, and concerning home study information

    b.  DHS's failure to follow state and federal law and agency policy and procedure by placing children in homes where in one or both parents are virtually unable to care for the children without the assistance of the OK DHS Foster Parent Stipend.

**EXHIBIT 11**

    c. DHS's failure to follow state and federal law and agency policy and procedure by placing children that are not equipped to provide proper care without the support of DHS in homes with excessive special needs

    d. DHS's failure to follow state and federal law and agency policy and procedure by placing children in homes with potential Foster or Adoptive Parents who have Big 5 violations which prohibit the placement of foster care children.

    e. DHS's failure to follow state and federal law and agency policy and procedure by using handcuffs on children in shelters and group homes on children under the age of 10.

    f. DHS's failure to follow state and federal law and agency policy and procedure by overworking child welfare workers by giving them case loads which exceed that as set out by Pinnacle Plan Standards.

48. All of these issues are matters of public concern as they deal directly with the safety of children in the state foster care system, the deprivation of the civil rights of children in Foster Care, the deprivation of the civil rights of parents who's children have been taken into custody and the failure of the State of Oklahoma to comply with the Pinnacle Plan and misrepresentation of the state of the Oklahoma Foster Care System to the Co-Neutrals assigned to monitor the progress made by DHS through implementation of the Pinnacle Plan.

49. Plaintiff by and through counsel reached out to the Co-Neutrals prior to her termination to express her concerns that the department and the individually named defendants were lying to the co-neutrals about the state of the Oklahoma Foster Care System.

50. During her employment when Plaintiff would express her concerns about the agency's failure to protect children, she was told by Majors and Howell on more than one occasion that she was "too nitpicky" when reviewing adoptive homes.  When Plaintiff asked multiple times for elaboration on what was "nitpicky", none was given. Further both Majors and Howell informed Plaintiff that she shouldn't worry about her concerns if the homes were approved by leadership as her name wasn't on it.

**EXHIBIT 11**

51. Plaintiff was also identified as a witness in the other cases by the other employees Stingley, Burley and Gorlaweicz who have the same or similarly situated claims with PMP's, and DHS's failure to follow the law and procedure.

52. Plaintiff was not consistently reviewed.  PMP's were not consistent and job duties were constantly changing, setting her up for failure in her job performance and this was also a part of her complaint.

53. Plaintiff was the only unclassified Foster Field Representative in the foster care and adoptions department. Plaintiff requested to be made "classified" but the agency denied her request.  Plaintiff was treated differently than other employees who did not speak out against the agency.

54. Throughout her employment but specifically in 2017 and 2018, Plaintiff continued to speak out to her superiors about the conditions that she observed and her concerns for the agency's failings, the overworking of staff, the failure to provide adequate resources and the risk to the life and safety of children in Oklahoma Foster Care.

55. As a result of her speaking out, Plaintiff was denied her classified status as an employee, was demoted, and was treated differently than other workers.

56. On or about May 18, 2018 prior to her termination, Plaintiff again sent an email to her superiors addressing concerns about the safety of children DHS was charged with protecting and the failure of the state agency to do what it is required by law to do to ensure the protection of children. Plaintiff had previously sent numerous such emails which were ignores, swept under the rug or downplayed.

57. Plaintiff was terminated on May 21, 2018, the next working day following her sending of the most recent critical email, with no response to the email.

## FIRST CAUSE OF ACTION – AGE DISCRIMINATION AGAINST INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY

58. Plaintiff adopts and incorporates the previous paragraphs as if they were fully set forth herein.

7

**EXHIBIT 11**

59. The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating against employees on the basis of age.

60. Defendant DHS employs more than 20 employees, which subjects it to the requirements under the ADEA.

61. At the time of the actions complained of herein, Plaintiff was a member of the class of people meant to be protected by the ADEA.

62. This claim is brought pursuant to Ex parte Young, 209 US 123 (1908), and its progeny for injunctive and ancillary relief against individual state officers in their official capacities is outside the scope of immunity afforded to the State of Oklahoma afforded to the State of Oklahoma by the Eleventh Amendment to the US Constitution.

63. Plaintiff is a member of a protected class in that she is a female over the age of 40 with a protected disability, which DHS was aware of and required accommodations due to her condition from time to time.

## SECOND CAUSE OF ACTION – DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT AGAINST ALL DEFENDANTS

64. Plaintiff adopts and incorporates the previous paragraphs as if they were fully set forth herein.

65. Defendant DHS is the recipient of federal funds and financial assistance and as such is subject to the restrictions set forth in the Rehabilitation Act of 1973, 29 USC §794 *et seq.*

66. As recipients of federal funding, the Defendant DHS is subject to the requirements of Section 504, including the requirement that it not subject otherwise qualified individuals with disabilities to discrimination on the basis of disability.

67. At all relevant times, Plaintiff Gregg was and is a qualified individual as defined by 42 USC 12111(8) of the ADAA and §504 of the rehabilitation act because she was able to perform the essential functions of her position with DHS.

68. Plaintiff Gregg has and has been "regarded as disability" as defined in the ADAAA at 42 U.S.C. §§12102(1) and (3) and incorporated into the Rehabilitation Act, in that she has and an actual or perceived physical impairment as a result of her fibromyalgia, anxiety and depression and as a result of her association with disabled persons being her husband who was disabled during her employment due to complications from taking the drug Invokana

8

**EXHIBIT 11**

and her father who was dying as a result of complications from Type 2 Diabetes and cancer

69. Alternatively, Plaintiff has a Section 504 disability as defined in the ADAAA at 42 U.S.C. §12102(1)(A) in that she has had impairment that limits her in one or more major life activity or bodily function in regard to the impairment to her fibromyalgia, anxiety, and depression.

70. Plaintiff Gregg has a disability protected by the Rehabilitation Act as defined at 42 USA §12102(B).

71. DHS was aware of the disabilities of Gregg as her disability arose in relation to her employment with DHS due to the death of Serenity Deal, her ongoing chronic exposure to children who have been injured by their parents and the Foster Care system.

72. Plaintiff was subject to ongoing need for medical intervention and monitoring to ensure that her fibromyalgia, anxiety and depression did not escalate as a result of the circumstances of her employment.

73. Defendant DHS's discharge of Plaintiff violated Section 504 of the Rehabilitation Act as amended by the ADAAA at 42 U.S.C.§12102(1)(C) and (3) which prohibits discrimination against qualified individuals because of an actual or perceived physical impairment.

74. Defendants Majors and Howell intentionally, with reckless indifference to Plaintiff Gregg's rights violated Section 504 of the Rehabilitation Act by terminating Plaintiff's employment despite the ADAAA and the Rehabilitation Act 's clear prohibition of taking adverse action against otherwise qualified individuals based on a perceived or actual impairment.

75. Gregg suffered adverse employment consequences as a result of asserting her rights and protections due under the Rehabilitation Act.

76. Regardless of whether Plaintiff has an actual disability as defined under the Rehabilitation Act, the Defendant regarded her as having a disability and treated her more harshly as a result of the action occurring.

77. As a result of Defendant DHS's conduct and the conduct of Majors and Howell, Plaintiff was forced to endure a hostile work environment, was not promoted or given raises, was overlooked for promotions for which she was otherwise qualified, has lost wages and benefits, and sustained damage to her reputation and career.

**EXHIBIT 11**

78. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant DHS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

79. Plaintiff Gregg has been injured in an amount in excess of $75,000 and is entitled to judgment against the Defendants for their wrongful conduct.

### THIRD CAUSE OF ACTION – VIOLATION OF THE OKLAHOMA ANTI DISCRIMINATION ACT AGAINST DHS

80. Plaintiff adopts and incorporates the previous paragraphs as if they were fully set forth herein.

81. The incidents describe above that violate the ADEA and ADA also violate the Oklahoma Anti-Discrimination Act ("OADA"), however due to eleventh amendment immunity an employee can only proceed under the OADA for monetary damages.

82. Plaintiff filed her Intake Sheet which is a document sworn under oath with the EEOC on February 12, 2018, prior to her termination which satisfies the filing requirement for asserting of claims under the OADA.

83. Filing a sworn intake sheet that is subsequently followed up by a sworn Charge of Discrimination satisfies the requirements of filing when (1) the questionnaire satisfies the EEOC's minimum requirements for a charge; (2) the plaintiff intended to activate the administrative process as indicated by the circumstances of the case; and (3) the EEOC ultimately treated the questionnaire as a charge. *See Jones v. United Parcel Serv., Inc.*, 502 F.3d 1200 (10th Cir. 2007).

84. Plaintiff timely filed her claims for discrimination for age and disability with the EEOC.

85. The elements required to prove age and disability discrimination under the OADA are substantially the same as they are under the ADEA and the Rehabilitation Act which mirrors the requirements of the Americans with Disabilities Act., as amended.

86. Plaintiff has sufficiently plead violations of the ADEA and the Rehabilitation Act sufficient to put Defendants on notice in the First and Second Causes of Action set forth herein.

**EXHIBIT 11**

87. Regardless of whether Plaintiff has an actual disability as defined under the Rehabilitation Act or OADA, the Defendant regarded her as having a disability and treated her more harshly as a result of the regarded disability.

88. Additionally, the Defendant DHS treated Plaintiff more harshly as a result of her association with individuals who had disabilities and required her to work off site.

89. As a result of Defendant DHS's conduct, Plaintiff was forced to endure a hostile work environment, was not promoted or given raises, was overlooked for promotions for which she was otherwise qualified, has lost wages and benefits, and sustained damage to her reputation and career.

90. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant DHS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

91. Plaintiff has been injured in an amount in excess of $75,000 and is entitled to judgment against the Defendant DHS for its wrongful conduct.

## FOURTH CAUSE OF ACTION – RETAILATION IN VIOLATION OF TITLE VII FOR FILING AN EEOC CLAIM AND ACTING AS A WITNESS IN AN EEOC CLAIM AGAINST ALL DEFENDANTS

92. Plaintiff adopts and incorporates the previous paragraphs as if they were fully set forth herein.

93. Plaintiff was retaliated against for participating in an EEOC claim against the agency as a charging party and as a witness.

94. On February 12, 2018, Plaintiff filed a cover letter with the EEOC alerting the agency of her relationship to Stingley, Goralewicz, and Burley.

95. Additionally, Plaintiff made her co-workers aware of her association with Stingley, Goralewicz, and Burley.

96. Plaintiff's co-worker Katrina Smith told Plaintiff's Supervisors Howell and Majors about her association with attorney Bussett, and Plaintiffs Stingley, Goralewicz, and Burley.

11

**EXHIBIT 11**

97. Plaintiff Gregg spoke with the same reporter who Plaintiffs Stingley, Goralewicz, and Burley had previously spoken with in March of 2018.

98. Defendants DHS, Lake, Majors, Howell and LeDoux knew or should have known about Plaintiff's association with attorney Bussett, and Plaintiffs Stingley, Goralewicz, and Burley and Plaintiff's conversations with the media.

99. As a result of the wrongful conduct and discharge Plaintiff has been injured by way of lost wages, emotional pain and suffering, loss of benefits and earning opportunities, damage to reputation, and attorney's fees and costs.

### FIFTH CAUSE OF ACTION – VIOLATION OF 42 USC §1983 FOR ASSERTION OF HER FIRST AMENDMENT RIGHTS BY THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY

100. Plaintiff adopts and incorporates the previous paragraphs as if they were fully set forth herein.

101. Plaintiff was retaliated against as a result of her decision to speak out against actions taken by the children in failing to protect certain parties.

102. Plaintiff was also retaliated against by exercising her first amendment rights to criticize the agency for its knowing and intentional failure to protect children in its custody or children it is investigating.

103. Plaintiff was retaliated against for petitioning the government for redress by seeking compliance with state and federal law from her superiors when cases were presented to her for approval for adoption placement when the proposed home did not comply with state and federal guideline or DHS policy and procedure.

104. Plaintiff has been retaliated against by the agency DHS and was targeted as a result of her decision to speak up against the wrongdoing by the State of Oklahoma.

105. Plaintiff engaged in protected activity in filing grievances over her treatment following her demotion over the incident at the shelter.

106. Plaintiff engaged in protected activity in seeking to be reclassified as a classified employee rather than a non-classified employee.

**EXHIBIT 11**

107.     The filing of grievances, even though private, constitute protected free speech so long as the Plaintiff was commenting on matters of public concern.

108.     The acting as a witness for other employees about the ongoing failure of DHS constitute protected free speech so long as Plaintiff was commenting on matters of public concern.

109.     Targeting Gregg over her support of and association with Bussett as a judicial candidate who sought to change the system as it related to DHS policy and procedure and failure to protect children in foster care is a violation to her rights of political association under the first amendment.

110.     Matters of public concern include those issues that impact Plaintiff individually so long as they also have a wider public concern as well.

111.     The grievances were an exercise of her rights to free speech and right to redress the government under the First Amendment to the United States Constitution and Article II, Section 22 of the Oklahoma Constitution.

112.     Plaintiff was speaking out on matters of public concern regarding issues and wrongdoing occurring at DHS.

113.     The individual Defendants knew or should have known that Plaintiff was speaking out on matters of public concern relating to the department treating employees doing the same job differently, on the failure of the department to follow state and federal law and department policy and procedure in the protection of children.

114.     The Defendants Majors and Howell, with the approval and knowledge of LeDoux and Lake, while acting under color of state law as employees of DHS, took adverse employment action against the Plaintiff after she exercised her rights to free speech under the U.S. and Oklahoma Constitutions.

115.     As a result of the conduct of Defendants, Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendants' unlawful conduct, a reaction that any reasonable person would have under like circumstances and has suffered adverse employment action.

116.     153.     Plaintiff Gregg has been injured in an amount in excess of $75,000 and is entitled to judgment against the Defendant DHS for its wrongful conduct.

13

**EXHIBIT 11**

## SIXTH CAUSE OF ACTION – RETAILATION BURK TORT
## AGAINST DEFENDANT DHS

117.     Plaintiff incorporate all previous paragraphs as if set forth herein.

118.     Plaintiff WAS an at will employee of the Defendant DHS.

119.     Plaintiff was involuntarily terminated from her employment with DHS.

120.     This constitutes adverse employment action.

121.     When Oklahoma law does not provide for an adequate remedy at law to fully vindicate the rights of an employee, an employee has a right to prosecute a Burk tort. *See Burk v. K-Mart Corp*, 1989 OK 22. 770 P.2d.

122.     The OADA does not provide a private right of action to persons who allege employment discrimination on the basis of retaliation. *Edwards v. Andrews*, 2016 OK 107.

123.     The Oklahoma Legislature has prohibited retaliation for assertion of rights under the OADA but has not supplied any remedy for an employee to seek redress for this violation. *Id.*

124.     Because of eleventh amendment immunity the Plaintiff is prohibited from fully pursuing her claims for violations of the ADEA against the Defendants.

125.     Because Plaintiff cannot fully prosecute their ADEA and ADA claims against the Defendants she also cannot purse a retaliation claim under the ADEA .

126.     Therefore, there is no adequate federal or state remedy for the prosecution of their retaliation claim except through the assertion of a Burk tort claim.

127.     Oklahoma has a clear and articulated public policy that prohibits retaliation against an individual based upon the exercise of her lawful rights including her right to be free from discrimination on the basis of Age and to not be retaliated in her employment for the assertion of these rights. See 25 O.S. §1601.

128.     Oklahoma has a clear and articulated policy regarding the obligation of all individuals to report suspected abuse and neglect of children.

129.     "Every person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter immediately to the Department of Human Services. Reports shall be made to the hotline provided for in subsection A of this section. Any allegation of abuse or neglect reported in any manner to a county office shall immediately be referred to the hotline by the Department." See 10A O.S. § 1-2-101.

14

**EXHIBIT 11**

130.    Oklahoma law and federal law has a clear and articulated public policy regarding a child welfare worker's obligation to protect children from abuse.

131.    Since 1985, it has been a clearly established that a caseworker has a constitutional duty to protect a foster child from private harm the caseworker knew or suspected would likely occur. See *Matthews v. Bergdorf & Okla. Dept. of Human Services*, 889 F.3d 1136, 1149 (10th Cir. 2018) *citing Yvonne L. ex rel Lewis v. NM Dept of Human Services*, 959 F.2d 833, 890-93 (10th Cir. 1992).

132.    Plaintiff was retaliated against for trying to comply with Oklahoma's clear and articulated public policy of protecting children from abuse and neglect and the obligation of a Child Welfare Worker to take action to protect children that are in the custody of the state of Oklahoma.

133.    Defendant's actions violate Oklahoma's clear and articulated public policy to protect children.

134.    As a result of Defendant DHS's conduct, Plaintiff was forced to endure a hostile work environment, was not promoted or given raises, was overlooked for promotions for which she was otherwise qualified, has lost wages and benefits, and sustained damage to her reputation and career and was ultimately terminated from her employment.

135.    Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant DHS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

136.    Plaintiff Gregg has been injured in an amount in excess of $75,000 and is entitled to judgment against the Defendant DHS for its wrongful conduct.

## SEVENTH CAUSE OF ACTION – VIOLATION OF THE OKLAHOMA CONSTITUTION BURK TORT AGAINST DEFENDANT DHS

137.    Plaintiff incorporates all previous paragraphs as if set forth herein.

138.    The Oklahoma Legislature has not provided a remedy at law or equity for retaliation based upon exercise of the right to free speech or governmental redress under the Oklahoma Constitution.

15

**EXHIBIT 11**

139.     The right to pursue a Burk Tort for violation of the free speech protections in the Oklahoma Constitution is established as a matter of law. *Dixon v. Okla. Bd. of Veterinary Med. Examiners*, 2009 U.S. Dist. LEXIS 44249.

140.     The Oklahoma free speech clause sweeps more broadly than the First Amendment of the United States Constitution and the court cannot find as a matter of law that there is no wrongful termination under the Oklahoma Constitution simply because there is not violation under the First Amendment of the United States Constitution. *Id.*

141.     Therefore, there is no adequate federal or state remedy for the prosecution of Plaintiff's retaliation claim and speech and redress violations except through the assertion of a Burk tort claim.

142.     Oklahoma has a clear and articulated public policy that prohibits retaliation against an individual based upon the exercise of her lawful rights including her right to be free from discrimination retaliation against in her employment for the assertion of these rights. See 25 O.S. §1601.

143.     Oklahoma also has a clear and articulated public policy that prohibits discrimination against an individual based upon the exercise of her lawful rights including her right to be free from discrimination on the basis of the exercise of free speech and the right to redress the government.  See Oklahoma Constitution Art II, §3 and §22.

144.     Gregg exercised her right to freedom of speech and spoke out against her employer on matters of public concern regarding the Agency's continued policy and law violations.

145.     Gregg also exercised her right to seek redress from the government on issues that she was aggrieved with and were matters of public concern regarding the failure to protect children that were under the care custody and control of DHS and the state of Oklahoma.

146.      Gregg spoke out about these issues throughout her employment even though speaking out about the same posed great risk and detriment to her career and employment with DHS.

147.     Gregg's commitment to speaking out about the wrongdoing by DHS resulted in her being demoted and changed from a classified employee to an unclassified employee.

148.     Gregg's commitment to speaking out about the matters of public concern and failings by DHS resulted in her being treated differently than her counterpart Katrina Smith

16

**EXHIBIT 11**

in that Katrina Smith's position was a classified position and Dahn Gregg's position with the same title and job duties was unclassified.

149.     Gregg asked her supervisors to be changed to classified and she was denied the same.

150.     On information and belief, Majors, Howell, LeDoux, and Lake did not reclassify Gregg as punishment for her refusal to comply with DHS policy and procedure and focus on the numbers rather than to actually comply with the dictates of the Pinnacle Plan.

151.     Gregg repeatedly spoke out about the failure of the agency and those individuals in her region to comply with DHS policy and procedure.

152.     Gregg was responsible for overseeing the placement of children for adoption in Delaware County which has some of the worst cases of abuse and neglect in the state.

153.     In 2015, DHS and 17 caseworkers were sued as a result of caseworkers and adoption placement workers failure to address and protect children in state custody in Delaware County. *See Matthews v. Okla. Dept of Human Services et al, 15-cv-676 Northern District of Oklahoma.*

154.     In *Matthews*, the Tenth Circuit held that "cover[ing] up evidence of abuse.... effectively impede[s] access to protective services, and perhaps additional sources of assistance, otherwise available to the victims" and a caseworker's acts to shield a foster parent from repeated child abuse and neglect referrals can give rise to constitutional liability on the DHS worker for failure to protect the children. S*ee Matthews v. Bergdorf & Okla. Dept. of Human Services*, 889 F.3d 1136, 1152 (10th Cir. 2018).

155.     Dahn Gregg took action to protect the children in state custody by speaking out and petitioning her superiors for redress when DHS sought to place children in homes where they were likely to be unsafe and subject to further neglect and poor treatment due to inability of foster parents to provide the required care for the children, the failure of DHS to follow state and federal law, and the failure of DHS to follow its own policies and procedures.

**EXHIBIT 11**

156.     Dahn Gregg's superiors knew that she was tracking and monitoring cases that came across her desk for signs of DHS's failure to comply with state and federal law and DHS policy and procedure and that Dahn Gregg was speaking to an attorney and member of the media about the same.

## EIGHTH CAUSE OF ACTION - CIVIL CONSPIRACY AGAINST THE INDIVUDAL DEFENDANTS

157.     Plaintiff incorporates all previous paragraphs as if set forth herein.

158.     On information and belief, Defendants Lake, Ledoux, Majors and Howell, acting in either their individual capacity and/or in their capacity as employees and directors of the DHS, jointly, unlawfully and illegally conspired to create a hostile work environment and to retaliate against Gregg, including attempting to constructively discharge her exercising her rights under the First Amendment to the U.S. Constitution and Article II, Sections 3 and 22 of the Oklahoma Constitution.

159.     The conduct of Defendants Lake, Ledoux, Majors and Howell is illegal and amounts to a civil conspiracy which is unlawful and gives rise to a claim for damages by the Plaintiff.

160.     As a result of the retaliation, Plaintiff was forced to endure a hostile work environment, lost time and benefits of employment and was terminated from her employment.

161.     As a result of the Defendants conduct, Plaintiff has lost wages and benefits, suffered negligent and intentional emotional distress, and sustained damage to her reputation.

162.     As a direct and proximate result of the Defendants' conspiracy to deprive her of her civil rights under color of state law and retaliatory conduct, Plaintiff has suffered, and continues to suffer, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses.

163.     As a direct and proximate result of Defendants' conduct, Gregg has lost compensation and benefits of employment and such losses will continue in the future.

164.     Defendants' conduct was undertaken with malice and reckless indifference to the Plaintiff's rights.

## EXHIBIT 11

## NINTH CAUSE OF ACTION – BREACH OF CONTRACT
## AGAINST ALL DEFENDANTS

165.     Plaintiff incorporates all previous paragraphs as if set forth herein.

166.     In 2008, the class action lawsuit *D.G. v. Yarbrough*, 08-cv-074, Northern District of Oklahoma was filed on behalf of all children currently or formerly in the custody of DHS.

167.     D.G. asserted *inter alia* a consistent and ongoing pattern of civil rights violations by the Oklahoma Department of Human Services against all children in the custody of DHS.

168.     One of the many bases for the claims asserted in D.G. was the routine and ongoing practice of DHS to overload and understaff the child welfare workers who were tasked with investigating the allegations of child abuse and neglect.

169.     D.G. was litigated for a number of years before the parties reached a settlement agreement which created and adopted the Pinnacle Plan in approximately 2012.

170.     The Pinnacle Plan put into place standards for the progressive case load for a child welfare worker and conformed the same to federal law for the investigation of claims involving abuse and neglect of children.

171.     The adoption of the Pinnacle Plan also put into place three Co-neutrals whose job it is to monitor DHS's compliance with the Pinnacle Plan settlement and the implementation of the same.

172.     One such standard was that no child welfare worker should have more than twelve (12) active investigations assigned to him/her at any one time.

173.     Further, the child welfare worker's status as a CSW I, CSW II, CSW III, or CSW IV would dictate the workload that the worker would have at any given time.

174.     For example, new CSW Is have a reduced case load until such time as they develop the requisite knowledge education and experience to investigate claims.

175.     Further, CSW Is were prohibited from investigating Priority 1("P1") claims involving heightened abuse and/or heinous and shocking abuse.

19

## EXHIBIT 11

176.     Dahn Gregg spoke out about the failure of the Department to comply with the dictates of the Pinnacle Plan.

177.     The Pinnacle Plan was a settlement agreement and is thus an enforceable contract.

178.     Dahn Gregg was an employee who was a beneficiary of the employee protections put into Pinnacle Plan in terms of a progressive case load, a case load cap, pay scales, workloads and other measures designed to protect employees and create an atmosphere where they were better able to perform their job and protect children.

179.     DHS, Lake, Majors, LeDoux, and Howell have all breached their obligations under the Pinnacle Plan.

180.     DHS, Lake, Majors, LeDoux, and Howell have all failed to comply with their obligations under the terms of the Pinnacle Plan to Dahn Gregg and all other employees who are impacted by the Pinnacle Plan.

181.     As a result of the breach of the contract, Dahn Gregg, as a beneficiary of the contract, has suffered damages in the nature of pain and suffering, emotional distress, lost wages, termination of employment, loss of benefits and other such things which she would have continued to enjoy in her employment if DHS, Lake, Majors, LeDoux, and Howell had not breached their obligations under the law.

182.     As a result of the breach, the Plaintiff Dahn Gregg has been injured in an amount in excess of $75,000 for actual damages as well as attorneys' fees and costs.

WHEREFORE, Plaintiff, Dahn Gregg, respectfully requests that the Court enter judgment in her favor and against the Defendant for the loss of her employment and benefits and damage to reputation and award her the attorney fees and costs incurred in the prosecution of this action. Plaintiff further requests any and all other relief that the court deems just and equitable.

**EXHIBIT 11**

Respectfully submitted by:

Rachel Bussett, OBA#19769
Patricia Podolec, OBA # 21325
Bussett Legal Group, PLLC
2201 N. Classen Blvd..
Oklahoma City, OK 73106
Telephone: (405) 605-8073
Fax: (405) 212-9112
Email: Rachel@BussettLegal.com
        PPodolec@BussettLegal.com
        Counsel for Plaintiff

**EXHIBIT 11**

Dan Ross
Administrator
Capital Assets Management



John Budd
Acting Director

May 21, 2019

Rachel L. Bussett
Bussett Legal Group, PLLC
2201 N. Classen Blvd
Oklahoma City, Oklahoma  73106

Re:        RM Claim #:      1920025673
           Claimant:        DAHN GREGG

Dear Ms. Bussett:

This letter is sent to confirm the receipt, May 17, 2019, of the claim for compensation you have tendered, asking for damages under the Governmental Tort Claims Act.  The identifying claim number is listed above.  Please use this number as a reference when calling to inquire about your claim.

Under the provisions of the Act, the State will be afforded up to 90 days from the receipt of your claim by us to review and evaluate it.  The State makes every effort to investigate and respond to claims as quickly as possible.

Please provide the following information to Risk Management on behalf of the Attorney General's Office:

☒         Claim supporting documentation.

The information is needed to investigate your claim.  The supplemental information must be received on or before June 4, 2019, the date from which the 90 days will begin.   If neither timely submission nor satisfactory explanation is made by this date, the claim will stand denied at the end of the expiration of 90 days from the date the information is due.  The right to seek compensation by suit in District Court may be restricted by the limitations period prescribed by law of one hundred eight (180) days after the denial of the claim.

Please contact me at 405-522-0411 or via e-mail at **Adriano.Coronel@omes.ok.gov** with any questions.

Sincerely,

*Adriano Coronel*

Claims Operations Manager
State of Oklahoma Risk Management Department

Exhibit 1  pg. 1

**EXHIBIT 11**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. **Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)**

**1. Personal Information**

Last Name: Gregg                  First Name: Dahn                  MI: _____

Street or Mailing Address: _____   Apt or Unit #: _____

City: _____   County: _____   State: _____   Zip: _____

Phone Numbers: Home: (405) _____   Work: (405) _____

Cell: (____) _____   Email Address: _____

Date of Birth: _____   Sex: ☐ Male ☒ Female   Do You Have a Disability? ☐ Yes ☐ No

**Please answer each of the next three questions.**   i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race?   Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _____

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Chad Gregg _____   Relationship: Spouse

Address: _____   City: _____   State: _____   Zip Code: _____

Home Phone: (____) _____   Other Phone: (____) _____

**2. I believe that I was discriminated against by the following organization(s):  (Check those that apply)**

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked.  If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Oklahoma State Department of Human Services

Address: 7201 NW 10th St.                  County: Oklahoma

City: Oklahoma City         State: OK Zip: 73013         Phone: (____) 405-470-6200

Type of Business: State Government   Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: Eugene Gissendaner         Phone: (405) 767-2656

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☐ 15 – 100   ☐ 101 – 200   ☐ 201 – 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) **Are you a federal employee?** ☐ Yes ☒ No

Date Hired: 2005 _____   Job Title At Hire: Permanency Planning Supervisor

Pay Rate When Hired: unknown _____   Last or Current Pay Rate: _____

Job Title at Time of Alleged Discrimination: Program Field Representa Date Quit/Discharged: _____

Name and Title of Immediate Supervisor: _____

If Job Applicant, Date You Applied for Job _____   Job Title Applied For _____

**EXHIBIT 11**

Exhibit 2  pg. 1          1

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race  ☑ Sex  ☑ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☑ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify:_____

If you checked genetic information, how did the employer obtain the genetic information?_____

_____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

**A. Date:** September 4, 2015 **Action:** _____
Notice of Involuntary Demotion to an unclassified Program Field Representative
_____

**Name and Title of Person(s) Responsible:** Steve Burton, Deputy Director_____

**B. Date:** _____  **Action:** _____
_____

**Name and Title of Person(s) Responsible** _____

**6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.**

Since the Pinnacle Plan was implemented in 2012, I have been expressing my concerns and opposition to DHS's ongoing

failure to comply with the standards in the plan._____

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

_____

_____

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Calvin Kelley | Male | Supervisor | |

B. Ms. Gregg is the only PFR who has an unclassified status. DHS denies request to change to classified._____

_____

**EXHIBIT 11**          Exhibit 2  pg. 2          2

**Of the persons in the same or similar situation as you, who was treated _worse_ than you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A._____

_____

B._____

_____

**Of the persons in the same or similar situation as you, who was treated the _same_ as you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A._____

_____

B._____

_____

**Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.**

**9.  Please check all that apply:**      ☐ Yes, I have a disability
☐ I do not have a disability now but I did have one
☐ No disability but the organization treats me as if I am disabled

**10.  What is the disability that you believe is the reason for the adverse action taken against you?   Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

**11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

**12.  Did you ask your employer for any changes or assistance to do your job because of your disability?**
☐ Yes ☐ No

If "Yes," when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

_____

How did your employer respond to your request? _____

_____

<u>EXHIBIT 11</u>                    Exhibit 2  pg. 3      3

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| <u>Full Name</u> | <u>Job Title</u> | <u>Address & Phone Number</u> | <u>What do you believe this person will tell us?</u> |

A._____

_____

B._____

_____

**14. Have you filed a charge previously on this matter with the EEOC or another agency?** ☐ Yes ☑ No

**15. If you filed a complaint with another agency, provide the name of agency and the date of filing:** _____

_____

**16. Have you sought help about this situation from a union, an attorney, or any other source?** ☑ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Rachel Bussett, Kelly A. Hensley; Bussett Legal Group PLLC 414 NW 4th St., Suite 200, Oklahoma City, OK 73120

405-605-8073 phone, 405-702-4984 fax, rachel@bussettlegal.com; associate@bussettlegal.com

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.**

<u>**BOX 1**</u>  ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

<u>**BOX 2**</u>  ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_Dana Gregg / KAH_                              _2/12/N_
Signature                                          Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. § 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

**EXHIBIT 11**                    Exhibit 2  pg. 4          4

During an administrative review by OCA, I was found to have committed no wrong doing. However, my supervisor, who made all decisions, and her supervisor were no longer with DHS. I was involuntarily demoted from a position. I did not receive an explanation, have no idea what they think I did wrong, and no chance to defend myself.

This involuntary demotion occurred on September 4, 2015. Ms. Gregg did not receive anything stating that she had committed any wrongdoing, nor has she had any disciplinary action. Ms. Gregg was merely told that she was being demoted to unclassified, without any reasoning as to why this was occurring. This caused great harm to Ms. Gregg's reputation in the department.

Numerous times during my employment with DHS, I have made complaints regarding inappropriate use of policy and unsafe practices. I have been retaliated against based upon these complaints.

I am continuously denied my request to be promoted to classified status, based upon retaliation.

**EXHIBIT 11**                                    Exhibit 2  pg. 5

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 564-2018-00861 |

**Oklahoma Attorney General's Office, Office of CR Enforcement** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) **Dahn Gregg** | Home Phone (Incl. Area Code) ( | Date of Birth 1973 |
|---|---|---|

Street Address / City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name **OKLAHOMA DEPARTMENT OF HUMAN SERVICES** | No. Employees, Members **500 or More** | Phone No. (Include Area Code) **(405) 522-1612** |
|---|---|---|

Street Address **7201 N.W. 10th St, Oklahoma City, OK 73013**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **09-04-2015**  Latest **05-21-2018**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Deborah Smith, Director of Child Welfare Services and Rebecca Price, Director to be the Assistant Director of the shelter. During my tenure, I have performed my duties satisfactorily to the best of my knowledge. On or about September 4, 2015, I was involuntarily demoted after being interviewed and providing information regarding inappropriate use of policy and unsafe practices within the shelter. I feel that my demotion was retaliation against me based on these complaints.

On May 21, 2018, I was wrongfully terminated. I believe my termination was a result of retaliation contrary to Title VII. I spoke to the media regarding DHS's failure to comply with its Pinnacle Plan, overstaffing, requiring employees to work overtime, which resulted into harm to the very children DHS are supposed to protect.

I believe that I have been discriminated against on the basis of my sex, Female and retaliated against for my complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended. In addition to the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 7-30-18   *Dahn Gregg*  Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**EXHIBIT 11**

Exhibit 3  pg. 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 564-2018-00861 |

| Oklahoma Attorney General's Office, Office of CR Enforcement | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 7-30-18          *Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Exhibit 3  pg. 2

**EXHIBIT 11**

**564-2018-00861**
## ESSENTIAL FACTORS COVERED WITH CHARGING PARTY

A.   Your charge has been taken under:

Title VII ☒ ADEA ☒ EPA ☐ ADA ☐ GINA ☐

B.   The Respondent will be notified of your charge within ten (10) days

C.   Withdrawal requests must be in writing

D.   Charging Party must keep the Commission informed of current address and phone number, or the Commission may dismiss your charge

E.   Charging Party must cooperate with the investigation

F.   Charging Party does not have an attorney ☐

G.   Charging Party does have an attorney ☒ representation form is attached.
**(Initial appropriate statement on F or G)**

Unless notified in writing, the investigator named below will be the investigator assigned to your charge. **Michael L. Talton**

H.   Notified CP concerning requesting a P.S.

**I HAVE BEEN ADVISED OF THE ABOVE INFORMATION AND HAVE RECEIVED A COPY:**

_Dale Gragg_ _____         _7-30-18_ _____
Charging Party Signature                  Date

_Michael L. Talton_ _____       _7/30/18_ _____
Commission Representative                 Date

*I hereby acknowledge that,* **Michael L. Talton,** Commission Representative has advised me that the particulars of my charge may not meet the jurisdictional requirements under the laws administered by the Equal Employment Opportunity Commission ☒, and/or that the particulars of my charge may not support a violation of the laws administered by the Commission ☒.

_Dale Gragg_ _____         _7-30-18_ _____
Charging Party Signature                  Date

_Michael L. Talton_ _____       _7/30/2018_ _____
Commission Representative                 Date

Exhibit 3  pg. 3

## EXHIBIT 11

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

<u>**EXHIBIT 11**</u>

Exhibit 3  pg. 4